**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALEXANDRA CHAVARRIAGA, | : |
| Petitioner, | : Civil Action No.: 12-7700 (MAS) |
| v. | : **OPINION** |
| GARY M. LANIGAN, et al., | : |
| Respondents. | : |

**APPEARANCES:**

    **FREDERIC J. GROSS, ESQ.**
    7 East Kings Highway
    Mt. Ephraim, New Jersey  08059
    Counsel for Petitioner

    **CAROL MARIE HENDERSON, ASSISTANT ATTORNEY GENERAL**
    **OFFICE OF THE N.J. ATTORNEY GENERAL**
    DIVISION OF CRIMINAL JUSTICE, APPELLATE SECTION
    P.O. Box 086
    Trenton, New Jersey 08625
    Counsel for Respondents

**SHIPP, District Judge**

    This matter is before the Court pursuant to a petition for a writ of habeas corpus under 28 U.S.C. § 2254, filed by counsel for Petitioner Alexandra Chavarriaga.  Principally, Petitioner seeks immediate release from prison on the ground that her sentence of confinement has been completed and Petitioner is being held beyond the expiration of her sentence.  (Petition, Count I.)  Petitioner's

challenge to her May 21, 2009, New Jersey state court conviction (Petition, Count II) has been stayed pending her exhaustion of state court remedies as required under 28 U.S.C. § 2254(b)(1)(A). (See this Court's January 24, 2013 Opinion and Order, Docket entry nos. 5 and 6.) Respondents have provided an answer to Count I of the Petition, as directed, regarding Petitioner's claim for immediate release. (Docket entry no. 13.) For the reasons stated below, this Court will deny Petitioner's writ for habeas relief on Count I of the petition.

## I.  BACKGROUND

The Court will address the factual and procedural history as to the claim set forth in Count I of this habeas petition seeking immediate release from prison. Petitioner is a state inmate presently confined at the Edna C. Mahan Correctional Facility for Women ("EMCF") in Clinton, New Jersey, serving a seven year prison term imposed by the Superior Court of New Jersey, Somerset County, pursuant to a judgment of conviction entered on or about May 21, 2009. (Petition, ¶¶ 2, 3, 22.)

Petitioner contends that she is being confined beyond the expiration of her prison term. As stated above, Petitioner was sentenced on May 21, 2009, to a seven year prison term. In Exhibit A attached to the Petition, Petitioner alleges that, as of October 31, 2012, the State calculated that the confinement portion of

Petitioner's sentence will be complete on May 7, 2013. (Petition, Ex. A.) This Court takes judicial notice of the New Jersey Department of Corrections ("NJDOC") website for offender searches which shows, as of this date, that Petitioner's current maximum release date is April 13, 2013, a variance of 24 days in Petitioner's favor. See https://www6.state.nj.us/DOC_Inmate.

Petitioner claims, however, that Respondents have failed to restore credits lost as a result of a wrongful prison disciplinary action that was overturned on November 2, 2012, after a remand for a rehearing from the Appellate Division.[1] (Petition, ¶¶ 5, 10.) In particular, Petitioner alleges that she accumulated 11 days of commutation time per month while confined at Garrett House but only received 4 days per month for the eleven months she was confined to maximum security at EMCF because of a wrongful disciplinary action. (*Id.*, ¶ 12.) Further, Petitioner alleges that she accumulated 5 days per month of minimum time while confined at Garrett House, but received no credit for minimum time from Respondents due to the wrongful prison disciplinary action. (*Id.*, ¶ 13.) Petitioner also claims that, because of her confinement at EMCF, her accumulation of work credits dropped substantially. (*Id.*, ¶ 14.)

---

[1] Petitioner was charged with violating Standard *259 for failing to produce urine on demand. (Petition at ¶¶ 6, 7.)

3

In sum, Petitioner alleges that a total of 77 days of commutation credits, 55 days of minimum time credits, and an unspecified number of work credits were wrongfully withheld from Petitioner that would have reduced her maximum release date by at least 132 days. Specifically, Petitioner contends that her mandatory release date would be no later than December 27, 2012, or earlier if additional commutation and minimum time credits are added for the months of November 2012 and December 2012.  (*Id.*, ¶¶ 15, 16, 17.) Consequently, Petitioner alleges that she is being held beyond the expiration of her maximum release date and seeks her immediate release from prison.

On March 12, 2013, the State filed an answer to the petition together with the relevant state court and administrative record. (Docket entry no. 13.)  The State provides the following background relevant to this petition.

On December 22, 2011, Petitioner was ordered to provide a urine sample, but she was unable to do so because she did not drink enough water to void a sufficient amount to be sampled.  As a result, on December 23, 2011, a disciplinary charge *.259 was filed for "failure to comply with an order to submit a specimen for prohibited testing." *N.J.A.C.* 10A:4-4.1.  A disciplinary hearing was held on December 30, 2011, and the hearing officer found Petitioner guilty of the

4

disciplinary charge. Petitioner was sanctioned with the loss of visitation privileges for one year. (Ra2.)[2]

That same day, on December 30, 2011 Petitioner filed an administrative appeal of the hearing officer's decision. (Ra3.) Petitioner argued that she had been unable to provide a urine sample because she was not provided with any drinking water for the two-hour time period she was given to produce a urine sample. She further argued that she made a good faith effort to comply, by voiding twice, but was informed that the amount was insufficient. Consequently, she was not given a reasonable opportunity to comply with the order as required under *N.J.A.C.* 10A:3-5.11(i). (*Id.*)

On January 3, 2012, the decision of the hearing officer was upheld on administrative appeal. (Ra4.) Thereafter, on February 16, 2012, Petitioner filed an appeal to the Superior Court of New Jersey, Appellate Division. (Ra1.) On April 9, 2012, Petitioner filed a motion for a stay of the administrative decision and for summary reversal. (Ra5.) On May 21, 2012, the NJDOC filed a motion for summary disposition. (Ra6.) The Appellate Division denied both motions on June 11, 2012. (Ra5, 6.)

On August 24, 2012, the NJDOC filed a motion for a temporary remand so as to allow the NJDOC to determine whether water was made

---

2  "Ra" refers to the Respondents' appendix or List of Exhibits set forth in this matter at Docket entry no. 13-22.

5

available to Petitioner when she was asked to provide a urine sample. (Ra7.) The Appellate Division granted the motion for remand on September 24, 2012, and further ordered that the remand be completed within 45 days. The Appellate Division retained jurisdiction over the appeal. (Ra7.)

On November 2, 2012, the NJDOC dismissed the *.259 disciplinary charge because it was unable to complete the remand proceedings within the 45 day time frame set by the Appellate Division. The NJDOC then notified the Appellate Division, on November 28, 2012, that Petitioner's *.259 disciplinary charge had been dismissed, thus rendering the disciplinary appeal moot. (Ra8.)

On December 4, 2012, Petitioner's counsel wrote to the appellate court arguing that the matter was not moot. Petitioner then raised for the first time that, despite having dismissed the disciplinary charge against Petitioner, the NJDOC had not restored commutation and work credits allegedly lost by reason of the initial December 30, 2011 disciplinary decision. (Ra9.)

The NJDOC then filed a motion to dismiss the disciplinary appeal as moot on December 28, 2012. (Ra10, Ra11.) Petitioner filed opposition on January 8, 2013. (Ra12.) The Appellate Division dismissed Petitioner's appeal as moot on January 11, 2013. (Ra13.)

On January 7, 2013, before the Appellate Division issued its dismissal order above, Petitioner filed an application for emergent

relief to a single judge of the Appellate Division. Petitioner argued that she was wrongly denied "remission" credits, which if applied by the NJDOC, would have reduce her projected release date to December 22, 2012. (Ra14.) In an Order filed on January 14, 2013, the Honorable Mitchel E. Ostrer, J.A.D., denied Petitioner's motion for emergent relief because Petitioner did not have an order or decision denying the credits. (Ra15.)

Petitioner moved for reconsideration of the January 14, 2013 Order, but then, on January 25, 2013, Petitioner's counsel sent a letter withdrawing the motion for reconsideration so as to pursue habeas relief in federal court on the issue of credits. (Ra16.) In fact, prior to the NJDOC's December 28, 2012 motion to dismiss the disciplinary appeal as moot, Petitioner already had filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, on or about December 18, 2012. (Docket entry no. 1.)

On February 7, 2013, Petitioner was informed by letter from the New Jersey State Parole Board ("NJSPB") that she would be paroled on February 20, 2013. (Ra19.) On February 11, 2013, however, Petitioner refused parole and requested to serve her maximum term, which was determined to be March 23, 2013. (Ra20.) On February 14, 2013, the NJSPB wrote to Petitioner confirming that she refused her parole date of February 20, 2013, and requested to serve her maximum term. (Ra21.)

7

Petitioner filed a reply to the NJDOC's answer to her petition on March 12, 2013, contesting the State's non-exhaustion argument. (Docket entry no. 15.)

## II. ANALYSIS

A. Standards Governing § 2254 Petitions

At the outset, federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that she is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States", § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).  Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 habeas relief, absent a showing that those violations are so great as to be of a constitutional dimension.  *See, Priester v. Vaughan*, 382 F.3d 394, 401-02 (3d Cir. 2004).

8

B.   Exhaustion Analysis of Section 2254 Claims

The NJDOC principally argues that this petition, namely Count I of the petition at issue here, should be denied for failure to exhaust state court remedies.  Generally speaking, exhaustion of state remedies is a necessary prerequisite to a federal habeas petition.  *See* 28 U.S.C. § 2254(b)(1)(A).  More specifically, the statute provides, in pertinent part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B) (i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1); *see also Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997), *cert. denied*, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts"). Thus, exhaustion demands that a petitioner must fairly present all federal claims to the highest state court before bringing them in federal court pursuant to 28 U.S.C. § 2254.  *See* 28 U.S.C. § 2254(b) and (c); *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir.

9

2002); *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002), *cert. denied,* 537 U.S. 1195 (2003).

Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995).  A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts.  *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992); *Santana v. Fenton*, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that she is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court."  *Parker v. Kelchner*, 429 F.3d 58, 63 (3d Cir. 2005).

In those instances where a state prisoner has failed to exhaust the legal remedies available to her in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus.  *See Whitney v. Horn*, 280 F.3d at 250.  A petitioner who has failed to properly pursue a claim in state court in accordance with state legal procedures can overcome this procedural bar to habeas

relief only by showing either: (1) both a valid cause for the procedural default and actual prejudice as a result of some violation of federal law; see *Johnson v. Pinchak*, 392 F.3d 551, 563 (3d Cir.2004), or (2) that the failure to review the petitioner's claim will inevitably "result in a fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). *See also Christy v. Horn*, 115 F.3d 201, 206–07 (3d Cir.1997)("in rare cases exceptional circumstances of peculiar urgency may exist which permit a federal court to entertain an unexhausted claim").

Here, the State argues that Petitioner failed to exhaust her administrative and state court remedies regarding the alleged denial of credits claim. The State notes that Petitioner never filed any action with the NJDOC in an effort to resolve the alleged loss of credits against her sentence. Rather, Petitioner first sought redress for loss of commutation and work credits in her December 4, 2012 letter to the Appellate Division that the disciplinary appeal was not moot. Petitioner again raised the issue concerning credits in her motion for emergent relief before the Appellate Division. In denying Petitioner's request for emergent relief, Judge Ostrer ruled:

> Although defendant asserts the Department of Corrections continues to penalize her as a result of the finding of an asterisk offense that she appealed and after remand the Department dismissed, she provides only a worksheet, and does [sic] provide an order of the Department reflecting

11

> that she continues to bear consequences of the now-dismissed asterisk charge and the Department refuses to remove those consequences, nor does she provide us with an order reflecting any attempt to seek review internally. She may renew her application upon submission of an appropriate order.

(Ra15.)

Petitioner counters the State's non-exhaustion argument by claiming (1) that she attempted to exhaust state remedies on at least three occasions, and (2) that under the circumstances of this case, exhaustion would not be required. (Docket entry no. 15-1.) Petitioner principally relies on pre-AEDPA case law, namely *Codispoti v. Howard*, 589 F.2d 135 (3d Cir. 1978), which is not relevant to the circumstances at issue here.

In *Codispoti*, the United States Court of Appeals for the Third Circuit excused petitioner's non-exhaustion because petitioner's efforts had languished in state court for many years without decision. In the instant case, there was no delay in state court rulings. Rather, the Appellate Division promptly denied Petitioner's belated request for emergent relief because Petitioner did not exhaust her administrative remedies.

Moreover, the limited e-mail communications between Petitioner's counsel and Deputy Attorney General Diane Moratti, co-defense counsel in Petitioner's civil rights action, *Chavarriaga v. State of New Jersey, Dept. of Corrections*, Civil No. 12-4313 (MAS),

12

concerning alleged withholding of good time credits do not constitute exhaustion of state administrative remedies. Petitioner's counsel raised the matter initially on November 26, 2012, and then again on December 9, 2012. On December 11, 2012, Ms. Moratti responded with a worksheet stating that Petitioner's work and minimum credits were correctly posted and that the alleged loss of commutation credits had been removed. Counsel then responded to Moratti that same day, disputing Moratti's statement and threatening to resort to federal habeas relief, which he did by filing this habeas petition on Petitioner's behalf on December 18, 2012.

The Court finds that Petitioner's explanation of events does not suffice to show exhaustion. There simply was no state administrative order or administrative grievance process reflecting that Petitioner attempted to resolve this dispute through normal and proper administrative channels of review. The letter and e-mail communication between Petitioner's counsel and the NJDOC's counsel in connection with an unrelated federal litigation in an ongoing civil rights complaint under 42 U.S.C. § 1983 does not constitute the requisite administrative review contemplated for purposes of exhaustion.

Moreover, Petitioner did not seek review before the New Jersey Supreme Court. Petitioner instead elected to eschew the full exhaustion of state court remedies by withdrawing her motion for

13

reconsideration before the Appellate Division and concentrating on federal habeas relief. Petitioner's allegations of NJDOC gamesmanship does not discharge her obligation to exhaust state administrative and court remedies before proceeding with this habeas petition.

Thus, Petitioner's failure to pursue available state remedies is fatal to this petition. Since Petitioner has failed to exhaust her administrative and state remedies with respect to the allegedly denied credits, Count I of her petition should be denied. Indeed, such petitions have routinely been denied in the past under similar situations where, for instance, it has been shown that a petitioner who is challenging a parole decision has not exhausted his other remedies before proceeding to federal court. *See e.g., Warwick v. Miner*, 257 F. App'x 475 (3d Cir. 2007); *Williams v. Winder*, 232 F. App'x 177 (3d Cir. 2007); *Coady v. Vaughn*, 251 F.3d 480 (3d Cir. 2001); *Cusatis v. Pa. Bd. Of Probation and Parole,* 1:12-CV-791, 2012 WL 3960317, *6 (M.D. Pa. Aug. 8, 2012); *Wilkinson v. Cameron*, 3:10-CV-1435, 2010 WL 4791661 (M.D. Pa. Nov. 18, 2010).

While federal courts may deviate from the exhaustion requirement and intervene in highly exceptional circumstances, such an exception would be justified only if Petitioner lacked any real opportunity to obtain redress in the state court, or if the corrective process was so clearly deficient as to render futile any effort to

obtain relief.  *See Duckworth v. Serrano*, 454 U.S. 1 (1981).  Based on the facts of this case, Petitioner cannot meet these stringent requirements to obtain premature federal review of her claim.  She clearly had other avenues of redress available in the state court before proceeding here.  Specifically, she could have presented her challenge to the alleged loss of commutation credits in a mandamus action addressed to the original jurisdiction of Superior Court of New Jersey.  *See Williams v. Varano,* 2009 WL 5126006, *3-4 (M.D. Pa. Dec. 17, 2009); *McCray v. Pennsylvania Dep't of Corrections*, 582 Pa. 440, 872 A.2d 1127, 1131 (Pa. 2005) (finding the Commonwealth Court to be the appropriate forum for petitioner's mandamus action challenging the DOC's failure to provide credit for time served in calculating new sentence).

    Moreover, Petitioner has neither alleged nor shown any deficiency or irregularity in the state corrective process or other justification sufficient to warrant exemption from the exhaustion rule.  In particular, as observed by this Court above, nothing contained in this petition indicates that an inordinate delay in the adjudication of Petitioner's claim in Count I has occurred in the past or will occur.[3]  *See Williams,* 2009 WL 5126006 at *3-4.

---

[3]  This Court also notes that Petitioner was scheduled to be paroled on February 20, 2013, which she declined.

Finally, questions regarding the calculation of credits under state law are issues that are particularly the province of state courts. *See Stewart v. Smith*, 3:10-CV-799, 2011 WL 837740, *6 (M.D. Pa. Jan. 4, 2011). Thus, a complete factual record developed by state courts and administrative proceedings is critical to aid this Court in review of Petitioner's § 2254 habeas claim.

Therefore, this Court finds that Count I of this habeas petition must be dismissed for failure to exhaust state remedies.

## CONCLUSION

For the foregoing reasons, the Court will dismiss this habeas petition for failure to exhaust state remedies as required under 28 U.S.C. § 2254(b)(1), or alternatively, Petitioner's claim for habeas relief under Count I of the petition will be denied for lack of merit and as moot. An accompanying Order is filed herewith.

                                              __/s/ Michael A. Shipp
                                              MICHAEL A. SHIPP
                                              United States District Court